EDWARD H. MORAN, Respondent, v. CATHARINE McLARTY, Impleaded, etc., Appellant.

*Mutual mistake — reformation of contract.*

The plaintiff brought this action to have an assignment of a mortgage, executed by him, reformed by having a guarantee of the mortgage contained in such assignment stricken therefrom, upon the ground of mutual mistake. Upon the trial evidence was given tending to show that the clause was in the assignment when it was executed; that plaintiff read portions of the assignment, and had an opportunity to read it all; that it was dictated and written in his presence and with his consent. Plaintiff denied all knowledge of the existence of the guarantee prior to the time of the commencement of an action brought to enforce it. *Held,* that a mutual mistake was not so clearly shown as to authorize a judgment directing a reformation of the assignment.

APPEAL from judgment in favor of the plaintiff entered upon a trial at Special Term.

*Thos. Allison,* for the appellant.

*Wm. A. Coursen,* for the respondent.

Davis, P. J.:

This action was brought to reform the assignment of a bond and mortgage made by respondent to appellant, by striking therefrom a guarantee of payment of such bond and mortgage. The respondent was the owner of an older bond and mortgage made by the defendants Hart to him to secure the sum of $3,500. This mortgage was overdue, and in order to pay off the same, the Harts arranged with one McKee, as attorney for the appellant, to sell to the appellant a bond and mortgage of $4,200, to be made by them to the respondent, and by the latter assigned to the appellant. The $4,200 mortgage was made to the respondent, pursuant to this arrangement, and by him assigned to the appellant, who paid therefor the sum of $3,625, out of which the respondent satisfied his mortgage of $3,500, and interest, and paid a small balance to the Harts. The instrument of assignment executed by the respondent contained a clause guaranteeing the payment of the $4,200 mort-

gage. The Harts failing to pay their mortgage at maturity, a fore-closure suit was commenced, to which the respondent was made a party by reason of his guarantee. He immediately brought this action, alleging, in substance, that the alleged guarantee was not in the instrument of assignment when executed by him, or that the same was inserted by mutual mistake.

On the trial, it appeared that the appellant, Mrs. McLarty, person-ally, had nothing to do with the transaction, the whole of the busi-ness on her part having been conducted by McKee, her attorney; and that after the $4,200 mortgage had been executed by the Harts and delivered to the respondents, he went to the office of McKee to get the money for the mortgage, and while there the assignment of the bond and mortgage and a satisfaction of the $3,500 mortgage were drawn up in his presence, and he signed the satisfaction-piece, and after looking over the assignment executed and acknowledged that instrument. He testified that not a word was said to him about guaranteeing the payment of the bond and mortgage, and that the first he knew that a guarantee was contained in the assign-ment was when he received the summons in the foreclosure suit. On cross-examination, he testified that he read the assignment partially over, and he supposed he had full opportunity to read the whole of it, and that he executed it after reading it partially.

On the part of the appellant, McKee her attorney testified that he acted on her behalf in the matter of buying the mortgage; that the respondent came to his office, and brought the bond and mort-gage and a satisfaction-piece of the other mortgage, and there executed the assignment. The assignment was drawn up while the respondent was present, and he talked with respondent about the security, and asked him if he would guarantee the mortgage. The respondent answered that he would, and said the security was ample; that he (McKee) then dictated the form of the guarantee, in the respondent's presence, to Mr. Gallaudet, by whom it was drawn. Gallaudet was called as a witness, and testified that he was a clerk of McKee; that the written parts of the assignment of the mortgage were in his handwriting; that he saw the respondent execute it; that a written clause of guarantee was in it when it was executed; that, at the time he was writing the assignment, he asked McKee, in the presence of the respondent, if the guarantee was to go

in; that McKee said "yes," and dictated to him the terms in which the guarantee was written, and the respondent signed it on the same day.

The respondent was recalled on his own behalf, and testified that he did not tell McKee, or any one, that he would guarantee the mortgage; that he was never asked to guarantee it, and had no knowledge that there was a guarantee in the paper at the time he signed it. This is the substance of all the testimony on the questions of mistake or fraud. It seems not to have been disputed on the trial that the guarantee was, in fact, in the instrument of assignment when it was executed by the respondent; and the only question under the pleadings in the action is, whether it was there by mutual mistake of the parties.

The law governing such cases is very well established. It was said by GROVER, J., in *Jackson* v. *Andrews* (59 N. Y., 244, 247): " To entitle the plaintiff to a reformation of the contract, he must prove that it was the intention of both parties to make a contract, such as he sought to have established, and that this intention was frustrated either from some fraud, accident or the mutual mistake of the parties, and that it is not enough for him to show his own intention. He must further show that the sense and intention of the defendant concurred therein. He must prove that both parties understood the contract as he alleged it to have been, and as in fact it would have been but for the fraud or mistake." The learned judge cites *Nevius* v. *Dunlop* (33 N. Y., 676) and *Story* v. *Conger* (36 id., 673).

In *Nevius* v. *Dunlop*, BROWN, J., in delivering the opinion of the court, says: " To entitle a party to the decree of a court of equity reforming a written instrument, he must show, first, a plain mistake, clearly made out by satisfactory proofs. Whenever the evidence is loose, equivocal or contradictory, or is, in its texture, open to doubt or opposing presumptions, the relief will not be granted. This proposition is obvious, because the written instrument, carefully and deliberately prepared and executed, is evidence of the highest character, and will be presumed to express the intention of the parties to it until the contrary appears by clear, positive and unequivocal evidence. In the second place, he must show that the material stipulation which he claims should be omitted or

inserted in the instrument was omitted or inserted contrary to the intention of both parties, and under a mutual mistake. It is not enough to show that he made a mistake himself — that through inadvertence and error on his part, he executed an instrument, the stipulations of which do not express what he intended. He must also show that the other contracting party labored under a similar delusion." He cites Story's Equity Jurisprudence (§§ 155, 157), and the opinion of the Court of Errors in *Lyman* v. *Utica Insurance Company* (17 Johns., 373), by SPENCER, Ch, J.

The proof on the trial of this case failed altogether to establish the second of these requisites. The most that can be said of the evidence is, that it showed that the respondent had no intention of guaranteeing the payment of the bond and mortgage; and that when he executed the assignment he was not aware that it contained a covenant of guarantee. This fact, however, arose, according to his own testimony, from his negligence in failing to read fully the instrument which he executed, or from his inadvertence in not attending to what was said and done in the dictation of the guarantee, and in the conversation preceding it. The appellant was not present (she taking personally no part in the transaction), but a mistake or fraud on the part of her attorney would be as conclusive upon her as though she had been present. But the evidence altogether fails to show that there was such mistake or fraud. The attorney testifies that the respondent expressly agreed to guarantee the payment of the mortgage, declaring it to be a perfectly valid security; and that the covenant of guarantee was dictated by him to his clerk, in the presence of the respondent, and the clerk testifies to the fact of such dictation; that the covenant was written in the presence of the respondent; that it was in the instrument when it was executed, and that the execution took place after the drawing of the instrument was completed, in his presence.

Upon this state of the evidence before the court, it was error, as it seems to us, to find that the clear case of mutual mistake required by the law was made out in such a manner as to entitle the respondent to the reformation sought. The evidence on the part of the appellant is supported by the written instrument, duly executed and acknowledged. The respondent's own testimony is not neces-

sarily in conflict with that instrument, because it goes no further than to show that he did not intend to guarantee the payment of the bond and mortgage, but, by his negligence, failed to observe that the covenant of guarantee was contained in the instrument.

The findings of the court below were erroneous, and the judgment based thereon must, therefore, we think, be reversed.

Judgment reversed, new trial ordered, costs to abide event.

Daniels, J., concurred.

Present — Davis, P. J., Brady, and Daniels, JJ.

Judgment reversed, new trial ordered, with costs, to abide event.